UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                        Plaintiff,<br><br>v.<br><br>JOSE RICARDO CAZARES-<br>RODRIGUEZ ,<br><br>                                        Defendant. | Case No.:  3:17-cr-00327-GPC-1<br><br>**ORDER GRANTING MOTION TO<br>DISMISS INDICTMENT**<br><br>**[Dkt No. 12]** |

Defendant Jose Ricardo Cazares-Rodriguez (Cazares-Rodriguez) moves to dismiss the Government's § 1326 prosecution against him by collaterally attacking the removal order that serves as the predicate offense.  Defendant alleges that the sole removal against him is invalid because he (1) received insufficient notice of the charges against him and because (2) he was not removable as charged.  Defendant argues that both of these violations prejudiced him because both tainted the validity of the removal order itself and, thus, if proven, would demonstrate that the removal order was "fundamentally unfair" within the meaning of § 1326(d).

**BACKGROUND**

**A. Expedited Removal**

On May 22, 2009, the United States Department of Homeland Security Immigration Customs Enforcement ("ICE") served Cazares-Rodriguez with a Notice of Intent to Issue Final Administrative Removal Order ("Notice of Intent"). Def.'s Ex. A, Dkt. No. 12-2 at 2. The Notice of Intent informed Defendant that he had been placed into removal proceedings under Section 238(b) of the Immigration and Nationality Act ("INA" or "the Act") (expedited removal of aggravated felons who are not permanent residents) based upon his January 13, 2009 conviction for Assault With the Intent to Commit Rape, a felony, in violation of Section 220(a) of the California Penal Code. *Id.* That conviction, the Notice of Intent charged, qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(U) of the INA ("attempt or conspiracy to commit an offense described in this paragraph") and made Defendant removable under Section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), of the INA (listing aggravated felons as class of deportable noncitizens). *Id.*

In response to the Notice of Intent, Defendant completed a Record of Sworn Statement in Affidavit Form, i.e., an administrative affidavit. Gov.'s Ex. 7, Dkt. No. 14-7 at 2. In it, Defendant swore that he was a citizen of Mexico and that he had been convicted of the California crime charged. *Id.* at 3. A Final Administrative Removal Order (FARO) was issued under Section 238(b) of the Act on that same day. Def.'s Ex. B, Dkt. No. 12-2 at 4.

**B. Section 220(a) Conviction**

Section 220(a) of the California Penal Code criminalizes assault with intent to commit certain enumerated criminal offenses.

(a)(1) Except as provided in subdivision (b) [addressing commission of burglary], any person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1 [Rape or penetration; acting in concert by force or violence], 288 [Lewd or lascivious

acts], or 289 [Forcible acts of sexual penetration] shall be punished by imprisonment in the state prison for two, four, or six years.

Cal. Pen. Code. § 220(a).

### 1. Felony Complaint

On November 18, 2008, the People of the State of California issued a felony complaint against Defendant for (1) Assault With Intent to Commit a Felony in violation of Cal. Pen. Code § 220(a); (2) Lewd Act Upon a Child, a felony, in violation of § 288(c)(1) of the code; (3) Child Molesting, a misdemeanor, in violation of § 647.6(a)(1) of the penal code; and (4) Assault in violation of 243.4(e)(1), a misdemeanor.[1] Gov.'s Ex. 2, Dkt. No. 14-2 at 2.

### 2. Plea Agreement

The Defendant entered into a plea agreement with the People of the State of California on December 9, 2008. Gov.'s Ex. 4, Dkt. No. 14-4. Pursuant to that Agreement, Defendant entered a plea of no contest to Count 1, a violation of § 220(a). *Id.*

### 3. Conviction Minutes

On May 20, 2009, Defendant appeared before a judge in the Superior Court of California, County of Los Angeles and entered a plea of nolo contendere to Count 1: violation of § 220(a). Gov.'s Ex. 3, Dkt. No. 14-3. The Court approved the plea after finding that there was a factual basis for the plea as evidenced by defense counsel's stipulation: "Counsel stipulate [sic] to a factual basis based on the information contained in the arrest report." *Id.* at 3. The remaining counts against Defendant were dismissed pursuant to the plea agreement. *Id.* at 5.

/ / / /

---

[1] The Court notes that Count 4 is not included in the felony complaint, as it appears in the exhibit, although the charge is summarized at the end of the complaint. *See* Dkt. No. 14-2 at 5. This fact, however, is not material as the charge was ultimately dropped by the time Defendant pleaded.

### 4. Abstract of Judgment

The Abstract of Judgment, filed September 14, 2002, states that Defendant was convicted of Assault With Intent to Commit a Felony in violation of § 220(a). Def.'s Ex. D, Dkt. No. 12-2 at 9.

### 5. Police Report

On August 11, 2008, a member of the Pomona Police Department filed an incident/crime report concerning an incident between Defendant and his common-law niece, aged 14, as recounted by Defendant's niece. Gov.'s Ex. 1, Dkt. No. 14-1.

The report states that the Defendant was driving the victim home after the victim went to visit her sister's new baby. *Id.* At some point the Defendant pulled into a mechanic shop on the way home after he told the victim that his car was overheating and that it needed to cool down. *Id.* The Defendant then began to complement the victim on her good looks and tried to hold her hand, but the victim resisted. *Id.* Thereafter, Defendant reached over to the victim with his right hand and "caressed her left cheek area . . . and attempted to turn her face towards him." *Id.* Defendant than gave the victim "a kiss on the lips" and the victim turned away. *Id.*

Sometime thereafter, Defendant told the victim to "take her pants off," but the victim refused. *Id.* Defendant told the victim to take off her pants again and advised her that "If you don't take your pants off, I will take them off for you." *Id.* When she refused, he reached over to her and attempted to unbutton her jeans. *Id.* At some time during the exchange, Defendant had also placed his hands on the victim's legs and upper thigh area and groped her breasts. *Id.* He had also mentioned to her that "he only needed ten minutes to have sex with her." *Id.*

The victim later tried to get out of the vehicle, but Defendant forced her back into the passenger seat. *Id.* Defendant then "moved one of his hands to the front of her throat" and pushed her backwards. *Id.* Thereafter, the victim told Defendant that she would have a beer. *Id.* While the Defendant reached to grab a beer from the back seat,

the victim reached for the passenger door, opened it, and ran to local store, where she was able to call her mother. *Id.*

## DISCUSSION

### I.  Collateral attack under § 1326(d)

In *Mendoza-Lopez* the Supreme Court held that the only way to attack the validity of a deportation or removal order relied upon in a § 1326 prosecution is to argue that the issuance of the order violates the noncitizen's due process rights. *See U.S. v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). This right to challenge the validity of a prior deportation removal order is codified at 8 U.S.C. § 1326(d). *See U.S. v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015).

Under § 1326(d), a noncitizen must satisfy three requirements in order to successfully challenge a removal order. The individual must show (1) that he exhausted administrative remedies available to seek relief against the order; (2) that the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); *see also Gonzalez-Flores*, 804 F.3d at 926.

In order to establish that a predicate removal was "fundamentally unfair," a noncitizen must demonstrate that the proceeding (1) violated the noncitizen's due process rights and (2) that the noncitizen suffered prejudice as a result. *U.S. v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011).

### II.  Exhaustion & Judicial Review, §§ 1326(d)(1) & (2)

Defendant argues that he has satisfied §§ 1326(d)(1) & (2) because his waiver of his right to administrative and judicial appeal was not knowing or intelligent.

A noncitizen "cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order." *U.S. v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000); *see also U.S. v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004). "In order for the waiver to be valid, however, it must be both 'considered and intelligent.'" *U.S. v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). A waiver of the right to

appeal that was not "considered or intelligent" deprives a noncitizen of his right to appeal and thereby deprives the noncitizen of a meaningful opportunity for judicial review within the meaning of § 1326(d)(2). *See U.S. v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003). The same is true of a waiver of the right to an administrative appeal. *See Muro-Inclan*, 249 F.3d at 1183; *see also U.S. v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

"For a waiver to be valid, the government must establish by 'clear and convincing evidence' that the waiver is 'considered and intelligent.'" *Pallares-Galan*, 359 F.3d at 1097. "Courts should indulge every reasonable presumption against waiver and they should not presume acquiescence in the loss of fundamental rights." *U.S. v. Lopez-Vasquez*, 1 F.3d 751, 754 (9th Cir. 1993) (per curiam) (citing *Barker v. Wingo*, 407 U.S. 514, 525 (1972)) (citations omitted).

The record shows that Defendant waived his right to appeal the Final Administrative Removal Order (FARO).



I Do Not Wish to Contest and/or to Request Withholding of Removal

☑ I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order. I wish to be deported to ___Mexico___ .

☑ I also waive the 14-day period of execution of the Final Removal Order.

| Jose Ricardo cazares R. | Jose Ricardo CAZares R. | |
| (Signature of Respondent) | (Print Name of Respondent) | (Date and Time) |
| | STEPHANIE CLARK | 5/22/09 1410 |
| (Signature of Witness) | (Print Name of Witness) | (Date and Time) |

Def.'s Ex. F, Dkt. No. 23-1 at 3. The above excerpt states in pertinent part: "I admit the allegations and charge in this Notice of Intent, I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. *I waive my right to rebut the above charges and my right to file a petition for review of the Final Removal Order.*" *Id.* (emphasis added). Defendant disputes that this waiver was made knowingly and intelligently and asserts that the Government cannot prove the opposite was true by clear and convincing evidence. The Court agrees.

Defendant argues that his waiver of his right to appeal was not made knowingly or intelligently because the form he signed did not adequately inform him that he could contest the legal conclusion that his conviction under Section 220(a) of the California Penal Code was an aggravated felony within the meaning of Section 1101(a)(43)(U) of the INA. Dkt. No. 23 at 2. The Government does not meaningfully rebut this argument. *See* Dkt. No. 28 at 8.[2]

Noncitizens who commit an aggravated felony at any time after admission are deportable. INA § 237(a)(2)(A)(iii). "A non-LPR who is deportable under INA § 237(a)(2)(A)(iii)," as alleged in Cazares-Rodriguez's Notice of Intent, "may be subject to the issuance of a removal order under either INA § 238(b) or INA § 240." *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 379 (5th Cir. 2005) (citing INA § 238(b)). Removals brought under INA § 240 are conducted by an immigration judge at a formal hearing. *See generally* INA § 240; 8 U.S.C § 1229a; *see also* 8 C.F.R. § 1240.10 (governing hearings under § 240). Section 238(b) removals, however, are expedited removals and do not entitle the noncitizen to a hearing before an immigration judge. *See generally* INA § 238; 8 U.S.C. § 1228. "Instead, a DHS [Department of Homeland Security] officer, who need not be an attorney, presides over this expedited removal process." *See Etienne v. Lynch*, 813 F.3d 135, 139 (4th Cir. 2015) (citing 8 C.F.R § 238.1(a) (proceedings under Section 238(b) of the Act)).

DHS initiates expedited removals under § 238(b) by serving the noncitizen with "Form I–851, Notice of Intent to Issue a Final Administrative Deportation Order." *See* 8

---

[2] The Government's opposition brief responds to this argument by stating the following: "Defendant argues that non-citizens may be deprived altogether of a right to challenge whether a conviction is an aggravated felony . . . But unlike in *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011), this was not an expedited removal, but an administrative removal." *Id.* Removals under § 238(b) are expedited removals, though the Government is right insofar as they are not the same as the expedited removal at issue in *Barajas-Alvarado*, which concerned § 235 removals. Regardless, however, distinguishing this case from *Barajas-Alvarado* still does nothing to respond to Defendant's argument that the forms he signed did not adequately explain that he could contest the legal conclusion that he was an aggravated felon.

C.F.R. § 238.1. "The Notice of Intent shall set forth the preliminary determinations and inform the alien of the Service's intent to issue Form I–851A, Final Administrative Order, without a hearing before an immigration judge." *Id.* § 238.1(b)(2). The Notice of Intent is the charging document and "shall include allegations of fact and conclusions of law." *Id.* The Notice of Intent also must advise the noncitizen that they may be represented by counsel; that they can request withholding of removal; that they can inspect the evidence supporting the charges; and that they may rebut the charges within ten calendar days after service of the notice. *Id.*

Those noncitizens who wish to contest their removal are presented with the following options on Form I–851:



**I Wish to Contest and/or to Request Withholding of Removal**

☐ I contest my dependability because *(Attach any supporting documentation):*

    ☐ I am a citizen or national of the United States.

    ☐ I am a lawful permanent resident of the United States.

    ☐ I was not convicted for the criminal offense described in allegation number 6 above.

    ☐ I am attaching documents in support of my rebuttal and request for further review.

☐ I request withholding or deferral of removal to _____MEXICO_____ [ Name(s) of Country or Countries]:

☐ Under Section 241(b)(3) of the Act, because I fear persecution on account of my race, religion, nationality, membership in a particular social group or political opinion in that country or those countries.

☐ Under the Convention Against Torture, because I fear torture in that country of those countries.

_____  _____  _____

(Signature of Respondent)       (Print Name of Respondent)       (Date and Time)

Def.'s Ex. F, Dkt. No. 23-1 at 3 (the Court observes that the word "dependability" should be "deportability."). The regulations further indicate that a noncitizen who chooses to rebut the charges must "indicate which finding(s) are being challenged" and should submit supporting evidence. *See* 8 C.F.R. § 238.1(c)(2). In the event that the noncitizen's "timely rebuttal, raises a genuine issue of material fact regarding the preliminary findings . . . the deciding Service officer may either (1) obtain additional evidence from any source, including the [noncitizen], or . . . (2) initiate removal proceedings under section 240 of the Act." 8 C.F.R. § 238.1(d)(2)(ii)(A).

8

At least two circuit courts have concluded that the Section 238 removal procedures do not provide noncitizens with the opportunity to contest that they qualify as aggravated felons and, therefore, that a noncitizen who fails to raise such an argument has not failed to exhaust.[3]  *See Etienne*, 813 F.3d at 140-41 (holding that noncitizen was not required to raise his legal challenge to removal in order to meet the exhaustion requirement of INA § 242(d)(1) because Form I–851 did not offer noncitizen "opportunity to challenge the legal basis of his or her removal"); *see also Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187 (5th Cir. 2013) (per curiam) (holding that INA § 238 and corresponding regulations did not provide noncitizen "with an avenue to challenge the legal conclusion that he does not meet the definition of an alien subject to expedited removal" as an aggravated felon.).  *But see Malu v. U.S. Att'y Gen.*, 764 F.3d 1282 (11th Cir. 2014) (holding that noncitizen failed to exhaust because he did not contest that he was an aggravated felon).  While the Court does not necessarily agree with the conclusion in *Valdiviez* that INA § 238(b) and its corresponding regulations do not provide a noncitizen with "an avenue to challenge" the aggravated felony determination, the Court is nonetheless persuaded by the conclusion in *Etienne* that Form I–851, at the very least, does not offer noncitizens the opportunity to challenge the legal basis of removal.

As the *Etienne* court pointed out, "Form I–851 offers no obvious opportunity to raise a legal challenge."  813 F.3d at 141.  It directs a noncitizen who wishes to rebut the charge of removability to contest their citizenship, legal status, or the fact that they were convicted, *see supra* Def.'s Ex. F, but does not "hold out" the option of challenging the underlying legal conclusion that the noncitizen is an aggravated felon.  *Id.* ("Exhaustion

---

[3] The Court observes that the circuit courts to address exhaustion of § 238 expedited removal proceedings analyzed the issue within the context of the INA's general exhaustion provision, § 242(d)(1) ("A court may review a final order of removal only if—the alien has exhausted all administrative remedies available to the alien as of right . . . ."), and not within the context of 8 U.S.C. § 1326(d)(1) ("alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that — (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order.").

of administrative remedies . . . means using all steps that the agency *holds out*, and doing so *properly*.") (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)) (emphasis in original). As such, the court concluded, because the form "offers no checkbox for lodging any specific legal challenges, a legal challenge in general, or other unenumerated challenges," the noncitizen was not required to raise his legal challenge to the aggravated felony determination in order to satisfy administrative exhaustion. *Id.* at 141-42.

The Court finds that this reasoning applies with equal force in the context of the § 1326(d) requirements. In order for Cazares-Rodriguez to make a meaningful waiver of his "right to rebut and contest the above charges" and his "right to file a petition for review of the Final Removal Order," he had to know that he could challenge his classification as an aggravated felon.

Whether a conviction qualifies as an aggravated felony has serious consequences, including ineligibility for discretionary relief from removal and most other forms of relief. *See* INA § 238(b)(5); 8 U.S.C. § 1228(b)(5) ("No alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion."); *see also id.* § 1158(b)(2)(B)(i) (aggravated felons may not apply for asylum); *id.* § 1229b(a)(3) (same for cancellation of removal); *id.* § 1229c(a)(1) (same for voluntary departure). *But see id.* § 1231(b)(3) (aggravated felon may apply for withholding of removal); § 1231(b)(3) (aggravated felon may apply for a waiver of admissibility if individual is otherwise eligible to apply for admission); § 1101(a)(15)(T), (U) (aggravated felon may still apply for T (trafficking victims) and U (victim of criminal activity)). Whether an individual has committed an aggravated felony is also the basis for being placed in expedited removal proceedings in the first place. S*ee generally* INA § 238; 8 U.S.C. § 1228; *see also Torres v. Lynch*, 136 S. Ct. 1619, 1621 (2016). Moreover and most importantly, being classified as an aggravated felon was the stated legal basis for Defendant's deportability. *See* Def.'s Ex. F, Dkt. No. 23-1 at 3; *see also* 8 U.S.C. § 1227(a)(2)(a)(iii).

Form I–851, however, gave Cazares-Rodriguez no indication that he could challenge his placement in expedited removal proceedings or that he could challenge his eligibility for relief or that he could challenge his very deportability all by contesting the legal conclusion that he was an aggravated felon. Indeed, the form that Defendant signed, as the *Etienne* court concluded, speaks only of factual challenges.

Accordingly and even if the Notice of Intent was read to Cazares-Rodriguez in Spanish — a fact that Defendant contests, *see* Def.'s Ex. G, Def.'s Affidavit ("The agent did not read the document to me in Spanish") — the Form's silence as to the consequences of waiver render it independently problematic under the Ninth Circuit's jurisprudence concerning waiver.[4]



CERTIFICATE OF SERVICE
I served this Notice of Intent. I have determined that the person served with this document is the above named individual.
_____ (Signature and title of officer)    _5/22/07_ _1400_ (Date and manner of Service)
I explained and/or served this Notice of Intent to the alien in the _____SPANISH_____ language.
Name of interpreter: _____
Location/Employer: _____

Def.'s Ex. F, Dkt. No. 23-1 at 3. That Defendant received translation of what the document said — a dubious proposition given Defendant's affidavit — does not mean that Defendant understood what he was giving up by waiving his right to rebuttal and his right to further judicial review.

In *United States v. Ramos*, a case that assessed the validity of stipulated removals,[5] the Ninth Circuit made clear that a noncitizen has to both appreciate the nature of what he is signing and understand the consequences flowing from any waiver therein. 623 F.3d

---

[4] If Defendant did not receive competent translation of his right to appeal in Spanish, when he signed the form, that alone would negate any argument that the waiver was "considered or intelligent." *U.S. v. Ramos*, 623 F.3d 672, 681 (9th Cir. 2010). That there is no evidence that the immigration officer was a certified interpreter also casts doubt on whether any translation that Cazares-Rodriguez did receive was competent in the first place. *See id.*

[5] The stipulated removal provision allows for removal without a hearing before an immigration judge and includes a concession of deportability and a waiver of the right to appeal the order. *Ramos*, 623 F.3d at 676.

672, 681-82 (9th Cir. 2010). Given that it is the Government's burden to establish a valid waiver, it is not enough, the *Ramos* court concluded, for the Government to argue that the noncitizen "did not give any indication to the deportation officer that he did not understand or appreciate what he was signing." *Id.* at 681. The *Ramos* court further decreed that a waiver is not "considered and intelligent" if the Government cannot establish that the noncitizen "received an adequate advisement of the consequences of his waiver of appeal." *Id.*

Here, Defendant has submitted an affidavit to the Court that indicates that he did not understand what he was signing. In it he asserts that he met an immigration official in San Bernadino, California who brought him completed paperwork and who told him "where to sign and where to initial." Def.'s Ex. G, Dkt. No. 23-1 at 5. The agent did not read the document to him in Spanish,[6] and Defendant did not have the opportunity to read the document himself. *Id.* Cazares-Rodriguez further asserts that the "agent did not explain to me what I was signing" and "did not explain what would happen if I did not sign the document, or any rights I would have if I saw an immigration judge." *Id.* Crucially, Defendant adds that "The agent did not explain that I had the right to appeal or that I had given up that right by signing where he told me to sign. [¶] If I had known I had the right to appeal the determination of the agent that I was an aggravated felon, I would have appealed. The agent did not tell me I had any option other than to sign the paperwork. I discovered later from others in custody with me that the paperwork consisted of deportation documents." *Id.*

Defendant's affidavit makes evident that he did not understand that he had the right to appeal his deportation or that he was giving up any right to contest his deportability by signing the document presented to him. Moreover, and even if he had understood the

---

[6] The Court observes that this factual assertion is in tension with the Certificate of Service, Def.'s Ex. F, Dkt. No. 23-1 at 3, which indicates that the immigration officer explained the Notice of Intent to the noncitizen in Spanish.

content of the form allegedly read to him in Spanish, the Form he signed gave no indication that he could challenge the legal conclusion that he was an aggravated felon.

The Government's response to these concerns does not come close to satisfying its burden that Defendant's waiver was made knowingly or intelligently. The Government argues that:

> Defendant was advised of his right to remain in the United States for fourteen calendar days to file a petition for judicial review . . . . Instead of invoking that right, defendant signed the Certificate of Service. By signing the Certificate of Service, defendant conceded that he was deportable and not eligible for any form of relief from removal, and that he did not wish to remain in the United States for fourteen days in order to apply for judicial review.

Dkt. No. 28 at 7. Notwithstanding the fact that Defendant contests that he was advised of his right to dispute his removal, this conclusory statement still does not demonstrate that Defendant understood what he was giving up when he signed away "his right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order," or that he understood the consequences of conceding that he was an aggravated felon. Def.'s Ex. F, Dkt. No. 23-1 at 3.

The Court is also unpersuaded by the Government's argument that Defendant's waiver was nonetheless valid because "Cazares-Rodriguez was an aggravated felon," and therefore "had no plausible form of relief." *Id.* In making this argument, the Government acknowledges that a waiver of the right to appeal cannot be made knowingly or intelligently if the noncitizen is not aware of the right to seek relief. *See, e.g.*, *Arrieta*, 3324 F.3d at 1079 (holding that failure of IJ to inform noncitizen of his eligibility to apply for relief from removal negated validity of the waiver of the right to appeal). According to the Government, however, "[b]ecause Cazares[-Rodriguez] was an aggravated felon, he had no plausible form of relief," and thus his waiver was not infected by any failure to inform him of his eligibility for relief. *See* Dkt. No. 28 at 8.

This line of argument is not responsive to the underlying concern that Defendant did not understand that he had the right to challenge his status as an aggravated felon. If

Cazares-Rodriguez could have successfully challenged his aggravated felony determination, he would not have been barred from applying for discretionary relief from removal. Defendant was not informed that by waiving his right to contest and appeal the deportation order, he was waiving the right to contest his status as an aggravated felon, a legal conclusion that formed the basis of his deportability, his placement in expedited removal proceedings, and his ineligibility for relief from removal. Accordingly, and because the Government has not demonstrated that he was informed of the opportunity or consequences of not contesting the aggravated felony determination, the waiver Cazares-Rodriguez signed was not made knowingly or intelligently. *See Arrieta*, 224 F.3d at 1079 ("A noncitizen "who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right.").

Finally, the Court further concludes that the Government is not entitled to an evidentiary hearing to further contest whether Defendant's waiver was valid. The Government asserts that the Court must hold an evidentiary hearing before determining whether Defendant knowingly or voluntarily waived his right to seek judicial review because "Defendant makes several factual statements that the Government would need time to develop, including whether defendant was apprised of his rights in Spanish or English, how the form was delivered to him, and how the waiver was acquired." Dkt. No. 28 at 8.

Such a conclusory statement is not enough to demonstrate that an evidentiary hearing is warranted. Defendant made clear in his supplemental briefing that it is the Government's burden to establish by clear and convincing evidence that the waiver was made knowingly or intelligently. The Government, in response, has not presented the Court with any modicum of evidence to demonstrate that the waiver was nonetheless valid or to dispute Defendant's affidavit. After being put on notice that it bore the burden of proof as to waiver, it was the Government's responsibility to supply the Court with affidavits, or other supporting evidence, demonstrating that there is reason to believe that Defendant made the waiver knowingly or intelligently or, at the very least, to ask the

Court for additional time to make such a showing.  The Government's failure to do so is not a reason to hold an evidentiary hearing.

Regardless, the Court concludes that an evidentiary hearing would not change the Court's conclusion anyway.  The Government has failed to meaningfully or persuasively respond to Defendant's argument that Form I–851 did not give him an opportunity to challenge the nature of his aggravated felony determination.  Accordingly and in light of Defendant's affidavit, the fact that Form I–851 does not explain that a noncitizen has the opportunity to contest his aggravated felony determination, and in the absence of any countervailing evidence to the contrary, the Court concludes that Defendant's waiver of his right to administratively contest or appeal his deportation was not made knowingly or intelligently.  Defendant, therefore, has satisfied prongs (1) and (2) of 8 U.S.C. § 1326(d).

## III.   Fundamental Fairness, § 1326(d)(3)

Defendant argues that his underlying expedited removal was "fundamentally unfair" because (1) he received insufficient notice of the removal charges leveled against him and because (2) he was not removable as charged because he did not commit an aggravated felony.  The Court will address each argument in turn.

### 1.  Insufficient Notice in Violation of Due Process

Defendant contends that his expedited removal proceeding violated due process because the Notice of Intent, i.e., the charging document, did not state which "aggravated offense" he had committed and was otherwise "unclear, unspecific, and vague."  Dkt. No. 12-1 at 5.

The Notice of Intent alleged that "on January 13, 2009," Defendant was "convicted of Assault With the Intent to Rape, a felony, in violation of Section 220(a) of the California Penal Code."  Def.'s Ex. F, Dkt. No. 23-1 at 2.  The Notice of Intent further charged that Defendant was removable under Section 237(a)(2)(A)(iii) of the Act (grounds for deportability) because Defendant had been convicted of an aggravated

felony as defined in § 1101(a)(43)(U) of the Act.  *Id.*  Section § 1101(a)(43)(U) reads as follows:

> **(U)** an attempt or conspiracy to commit an offense described in this paragraph.
>
> The term applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996.

8 U.S.C. § 1101(a)(43)(U).  Defendant argues that the Notice of Intent was defective because it does not state which "offense" Defendant allegedly attempted to commit.  In other words, Defendant avers that because he could not have known which of the many offenses listed in § 1101(a)(43) was implicated in the removal order, the Notice of Intent was procedurally deficient.  *See generally* INA § 1101(a)(43)(A) – (U).

The Court does not find this argument persuasive.  The Notice of Intent clearly states that Defendant's conviction for "Assault With Intent To Rape" was an aggravated felony that subjected him to removal.  "Rape," in turn, is listed as an aggravated felony offense under § 1101(a)(43)(A) ("murder, rape, or sexual abuse of a minor" constitutes an aggravated felony).  There could have, therefore, been little doubt that the "attempted offense" being charged in the removal order was attempted rape.

Defendant's citation to *Pierre v. Holder* does not persuade the Court otherwise. 588 F.3d 767 (2d. Cir. 2009).  There, the Second Circuit held that the Government failed to provide the noncitizen with notice of the charge against him and an opportunity to contest that charge because the Notice of Intent charged him with being an aggravated felon under § 1101(a)(43)(M) (offense involving fraud or deceit), but ultimately removed him pursuant to § 1101(a)(43)(U) (attempt to commit offense in this paragraph).  *Id.*  As such and because the defendant had no notice or reason to defend against an attempt

charge, the Court concluded that there had been a due process violation that rendered the removal proceeding fundamentally unfair and prejudicial. *Id.* at 777.

This same defect is not present here. The Notice of Intent charged Defendant with being an aggravated felon based on § 1101(a)(43)(U)'s attempt provision, which necessarily incorporates one of the offenses described in § 1101(a)(43). Accordingly, and even if under certain circumstances it might be insufficient for a Notice of Intent to merely reference the attempt subsection, without a corresponding predicate aggravated offense, the Court does not find that notice was deficient here. The allegations that Defendant had been convicted of "Assault with Intent to Rape" and that he was deportable as an aggravated felon under § 1101(a)(43)(U) (attempt) was sufficient to put him on notice that he was being removed for attempted rape. Defendant's argument, therefore, fails.

### 2. "Not removable as charged"

Defendant further argues that his removal was "fundamentally unfair" because he was not removable as charged. The Ninth Circuit has held that a noncitizen defendant who was not removable as charged at his or her immigration proceeding categorically demonstrates that the removal proceeding was fundamentally unfair and prejudicial. *See U.S. v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) ("Camacho's Notice to Appear charged him as removable *only* for having committed an aggravated felony; as discussed above, Camacho's prior conviction did not fit that definition. Thus, Camacho was removed when he should not have been and clearly suffered prejudice.") (emphasis in original); *see also U.S. v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014). Here, Defendant is arguing that he was not removable as charged because his conviction under Cal. Penal Code § 220(a) did not qualify as an aggravated felony under § 1101(a)(43)(U) and (A).

### A. Categorical Analysis

To determine whether Defendant's conviction under California's Section 220(a) qualified as an aggravated felony under the INA, the Court must apply the two-step

framework laid out in *Taylor v. U. S.*, 495 U.S. 575 (1990), and *Shepard v. U.S.*, 544 U.S. 13, 15 (2005).  *See Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1100 (9th Cir. 2011) (as amended).  "Under those approaches, we compare the crime of conviction," which in this case is Cazares-Rodriguez's conviction under California Penal Code § 220(a), "with the generic crime," attempted rape, "to determine whether the latter encompasses the former."  *Id.*

"Because Congress predicated deportation 'on convictions, not conduct,' the [categorical] approach looks to the statutory definition of the offense of conviction, not to the particulars of an alien's behavior."  *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015); *see also U.S. v. Bolanos-Hernandez*, 492 F.3d 1140, 1143 (9th Cir. 2007) ("*Taylor* requires that the court analyze the statutory definition of the offense rather than the defendant's underlying conduct.").  Stated differently, the court looks "not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony."  *Murillo-Prado v. Holder*, 735 F.3d 1152, 1156 (9th Cir. 2013) (per curiam) (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)).  "'[G]eneric,' [ ] mean[s] the offense must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison.  Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily involved . . . facts equating to [the] generic federal offense.'"  *Moncrieffe*, 133 S. Ct. at 1684 (citation omitted).

In conducting this comparison of the state offense and the federal offense, courts presume that the conviction "rested upon . . . the least of the[ ] acts" criminalized by the state statute.  *See Johnson v. U.S.*, 559 U.S. 133, 137 (2010).  The analysis then becomes whether the minimum conduct criminalized by the state statute is encompassed by the general federal offense.  *Moncrieffe*, 133 S. Ct. at 1684.  If the state statute of conviction criminalizes more conduct that the federal generic offense, "then the state conviction does not fall within the federal definition, and will not qualify as an aggravated felony

[or] crime of violence for immigration purposes." *Ramirez v. Lynch*, 810 F.3d 1127, 1131 (9th Cir. 2016).

### 1. Generic Attempted Rape

"In order to apply this categorical approach, [a court] must first determine the elements or definition of the federal generic offense." *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013). Defendant argues that the federal generic definition of rape includes an element of force. Defendant is incorrect.

Defendant cites to Black's Law Dictionary for the proposition that "The definition of federal rape . . . requires the use of force." Dkt. No. 19 at 3. Defendant's conclusion, however, is contradicted by *U.S. v. Yanez-Saucedo*, which held that the generic, contemporary meaning of rape "can, but does not necessarily include an element of physical force beyond that required for penetration." 295 F.3d 991, 996 (9th Cir. 2002); *see also U.S. v. Flores-Trujillo*, 2016 WL 3033858, *2 (S.D. Cal. May 27, 2016) ("Therefore, the generic meaning of rape includes sexual intercourse achieved without the use of force.").

By contrast, "the ordinary, contemporary, and common legal meaning of 'rape' . . . 'contains at least the following elements:' that the defendant engage in sexual activity with another person and that the sexual activity is (1) unlawful and (2) without consent." *Rivas-Gomez v. Gonzales*, 441 F.3d 1072, 1074 (9th Cir. 2006), *superseded on other grounds by* 225 Fed. Appx. 680 (9th Cir. 2007). A state rape statute, therefore, that does not include an element of force can nonetheless constitute a conviction for an aggravated felony under § 1101(a)(43)(A). *See Yanez-Saucedo*, 295 F.3d at 996; *see also U. S. v. Beltran-Munguia*, 489 F.3d 1042, 1047 (9th Cir. 2007); *Castro-Baez v. Reno*, 217 F.3d 1057, 1059 (9th Cir. 2000).[7]

---

[7] The Court observes that "attempt offenses," in fact, require two *Taylor* analyses, one that compares the definition of "attempt" under state law to the generic definition of "attempt" and one that compares the underlying criminal offense to its generic counterpart. *Rebilas v. Mukasey*, 527 F.3d 783, 787 (9th Cir. 2008). The Court, therefore, in order to determine whether Defendant's Section 220(a) conviction

## 2. Statute of Conviction, Cal. Penal Code § 220(a)

The Court next turns to the statute of conviction. Section 220 of the California Penal Code states that:

> any person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1 [Rape or penetration; acting in concert by force], 288 [Lewd or lascivious acts], or 289 [Forcible acts of sexual penetration] shall be punished by imprisonment in the state prison for two, four, or six years.

Cal. Penal Code § 220(a).

The Government has all but conceded that Section 220(a) is not a categorical match to the federal generic definition of attempted rape. *See* Dkt. No. 14 at 9-11. As such and instead, the Government argues that Section 220(a) is a divisible statute and that the implementation of the modified categorical approach reveals that Defendant was convicted of Assault With Intent To Commit Rape, a crime that qualifies as generic attempted rape. *Id.* ("While Penal Code § 220(a) does not appear to be a categorical match to rape, under the modified categorical match, the record documents establish that defendant's conviction is a match for [ ] attempted rape.").

The Court will address each of these assertions in turn, that is, that Section 220(a) is a divisible statute and that applying the modified categorical approach reveals that Defendant was convicted of Assault With Intent to Commit Rape.

////

---

qualifies as an aggravated felony would also have to define generic "attempt" under 8 U.S.C. § 1101(a)(43)(U). *See Rebilas*, 527 F.3d at 785 (finding that to hold that a conviction was a categorical match for attempted sexual abuse of a minor under 8 U.S.C. § 110(a)(43)(A) and (U), court would also have to hold that the elements of attempt under Arizona law and the elements of attempt under 8 U.S.C. § 1101(a)(43)(U) are a categorical match). Yet because this Court holds below that the record of conviction does not "unequivocally establish that the defendant was convicted of the generically defined crime [i.e. rape]," *see U.S. v. Almazan-Becerra*, 482 F.3d 1085, 1088 (9th Cir. 2007), the Court need not reach the issue.

3:17-cr-00327-GPC-1

## B. Modified Categorical Approach

In a "narrow range of cases," *Taylor* permits a court to employ the modified categorical approach, "as a tool for implementing the categorical approach." *Descamps v. U.S.*, 133 S. Ct. 2276, 2283-84 (9th Cir. 2013); *see also Ramirez*, 810 F.3d at 1132 ("The modified categorical approach is thus 'a tool' that allows us to apply the categorical approach."). A court resorts to the modified categorical approach when a conviction statute is divisible, "*i.e.*, comprises multiple, alternative versions of the crime." *Id.* at 2284. The modified categorical approach permits a court to "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* The purpose of the modified categorical approach is to help the court determine whether the defendant's actual conviction fits within the generic federal definition or if it is too broad and, therefore, not an aggravated felony. *Descamps*, 133 S. Ct. at 2284. As such, the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts of a crime as well as its basic method." *Ramirez*, 810 F.3d at 1132 (quoting *Descamps*, 133 S. Ct. at 2285).

### 1. Divisibility of Section 220(a)

The divisibility analysis is an elements-based analysis. *See Descamps*, 133 S. Ct. at 2285. "The critical distinction," between a divisible statute and an indivisible statute, is that the latter contains "multiple, alternative *means* of committing the crime," whereas the former involves "multiple, alternative *elements* of functionally separate crimes." *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014); *see also U.S. v. Cabrera–Gutierrez*, 756 F.3d 1125, 1137 n.16 (9th Cir. 2014) ("under *Descamps*, what must be divisible are the elements of the crime, not the mode or means of proving an element."). Generally, where a statute is divisible the prosecutor will "select the relevant element from its list of alternatives. And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." *Descamps*, 133 S. Ct. at 2290.

The modified categorical approach focuses upon the elements of the statute of conviction because "the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances." *Id.* at 2288. Likewise, "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." "Therefore, the key question [a court] must ask when determining a statute's divisibility is whether a jury would have to be unanimous in finding those separate elements." *Ramirez*, 810 F.3d at 1134. "Otherwise, the Court's express purpose for separating indivisible statutes from divisible statutes—preventing [ ] courts from finding *facts* on which a jury *did not* have to agree, rather than *elements* on which a jury *did* have to agree—would be undermined." *Rendon*, 764 F.3d at 1086-87 (emphasis in original).

The court in *Almanza-Arenas v. Lynch* laid out a two-pronged analysis for conducting the divisibility inquiry. 815 F.3d 469, 477 (9th Cir. 2015) (en banc). The first step instructs courts to conduct an elements-versus-means test by examining the statute of conviction to decipher whether it contains multiple crimes with distinct elements or multiple means of committing one crime. *See id.* at 477-79. Second, a court then inquiries into whether state courts applying the statute of conviction treat the statute as having distinct elements as opposed to different means of committing the same crime. *Id.* at 479-82. In some cases, a state court decision will "definitively answer the [elements versus means] question" and in others "the statute on its face may resolve the issue." *Mathis v. U.S.*, 136 S. Ct. 2243, 2256.

A review of California state court decisions reveals that Section 220(a)'s specific intent element prohibits multiple different crimes and not multiple different means of committing the same crime. *See People v. Dillon*, 95 Cal. Rptr. 3d 449, 459 (Cal. Ct. App. 2009) ("section 220 requires . . . the specific intent to commit the underlying sexual act").

California courts consider assault with intent to commit rape to be its own crime and to be an aggravated form of attempted rape. *See People v. Maury*, 68 P.3d 1, 399-01 (Cal. 2003)) ("The essential element of assault with intent to commit rape is the intent to commit the act [i.e., rape] against the will of the complainant. The offense is complete if at any moment during the assault the accused intends to use whatever force may be required.") (internal citation omitted) (brackets added); *People v. Cook*, 213 Cal. Rptr. 3d 497, 500 (Cal. Ct. App. 2017) ("An assault is an unlawful attempt, coupled with a present ability, to inflict a violent injury on a person (§ 240) . . .[and t]he only additional element of assault with intent to commit rape is the perpetrator's subjective intent, during the commission of the assault, to commit a rape."); *In re Jose M*, 27 Cal Rptr. 2d 55, 58 (Cal. Ct. App. 1994) ("One charged with rape by force or violence may be found guilty of assault with intent to commit rape . . . the latter being merely an aggravated form of attempted rape—that is, a form also requiring an assault."); *People v. Carapeli*, 247 Cal. Rptr. 478, 481 (Cal. Ct. App. 1988) ("In this case the court instructed on assault with intent to commit rape, telling the jury that it must find beyond a reasonable doubt that ". . . a female person was assaulted, and . . . [t]hat such assault was made with the specific intent to commit rape."); *see also Bolanos-Hernandez*, 492 F.3d at 1144 (noting that assault with intent to commit rape, in violation of Cal. Penal Code §§ 220 and 261 is considered to be an aggravated form of attempted rape).

Likewise, California courts try, for example, assault with attempt to commit sodomy, assault with attempt to commit oral copulation, assault with intent to commit mayhem, and assault with intent to commit lewd or lascivious acts all as their own crimes. *See, e.g.*, *In re John W*, 146 Cal. Rptr. 826 (Cal. Ct. App. 1978) (appeal from judgment entered by juvenile court that minor had committed assault with intent to commit sodomy); *People v. Holt*, 937 P.2d 213, 248 (Cal. 1997) (Defendant appealed failure to instruct jury on assault with intent to commit sodomy as a lesser-included offense of sodomy); *People v. Dillon*, 95 Cal. Rptr. 3d 449, 464 (Cal. Ct. App. 2009) (to be convicted of assault with intent to commit forcible sexual penetration, jury must find

that defendant "intended to commit the penetration of the genital opening of another by force."); *People v. Gonzalez*, 39 Cal. Rptr. 2d 778 (Cal. Ct. App. 1995) (appeal from conviction for "assault with intent to commit unlawful oral copulation (Pen. Code, §§ 220, 288a, subd. (c))"); *People v. Deporceri*, 130 Cal. Rptr. 2d 280 (Cal. Ct. App. 2003) (appeal from conviction of assault with intent to violate section 288, "[d]efendant's prior crime was a violation of section 220, specifically assault with intent to violate section 288"); *Iiams v. Superior Court*, 45 Cal. Rptr. 627 (Cal. Ct. App. 1965) (appeal of conviction for assault with intent to commit mayhem under Cal. Penal Code §§ 220 and 203).

That California courts routinely treat the specific intent element of Section 220(a) offenses as creating different crimes belies Defendant's assertion that a jury "could find a defendant guilty without unanimously agreeing" that the defendant had the specific intent to commit one specific, enumerated offense. *See* Dkt. No. 19 at 5. To the contrary, California's jury instructions make evident that they require the jury to find that the defendant had the specific intent to commit the underlying sexual offense.

> CALJIC 9.09 Assault with Intent to Commit Certain Felonies (Spring 2011 Revision)
> **Authority: (Penal Code § 220, subdivision (a) (1) )**
>
> [Defendant is accused [in Count[s] ] of having committed the crime of assault with intent to commit [rape] [sodomy] [ ] [any violation of section ], a violation of section 220, subdivision (a) (1) of the Penal Code.]
>
> Every person who assaults another with the specific intent to commit [rape] [sodomy] [ ] [any violation of section ] is guilty of the crime of assault to commit[rape] [sodomy] [ ] [any violation of section ] in violation of Penal Code section 220, subdivision (a) (1).
>
> In order to prove this crime, each of the following elements must be proved:
>
> 1. A person was assaulted; and
> 2. The assault was made with the specific intent to commit (identify specific crime or crimes objective).

This crime is complete if an assault is made and at any moment during the assault the aggressor intends to commit (identify specific crime or crimes objective) upon the person assaulted.

**USE NOTE**

CALJIC 9.00, definition of "assault," must be given.
See CALJIC 9.30 for definition of "mayhem."
See CALJIC 10.00 for definition of "rape."
See CALJIC 10.02 for definition of "rape acting in concert."
See CALJIC 10.12 for definition of "unlawful oral copulation, acting in concert."
See CALJIC 10.20 for definition of "unlawful sodomy."
See CALJIC 10.21 for definition of "unlawful sodomy, acting in concert."
See CALJIC 10.30 for definition of "unlawful penetration by foreign object."
See CALJIC 10.31 for definition of "unlawful penetration by foreign object, acting in concert."
See CALJIC 10.41 to 10.43 for definition of "lewd acts upon a child."

CALCRIM NO. 9.09 ("Assault with Intent to Commit Certain Felonies) (2011). By cross-referencing the jury instructions for the qualifying predicate sexual offenses, these instructions make evident that a jury tasked with passing judgment on a § 220(a) conviction must find, as an element of the case, that the defendant had the intent to commit one of the specific crimes identified above. *See Dillon*, 95 Cal. Rptr. at 459 ("section 220 requires . . . the specific intent to commit the underlying sexual act"). One of those crimes, in turn, is rape. Accordingly and notwithstanding Defendant's protestations to the contrary, section 220(a) is a divisible statute.[8]

## 2. Applying the Modified Categorical Approach to Plea Convictions

"[W]hen a statute is overbroad and divisible [ ] we turn to step three—the 'modified categorical approach.' At this step, we may examine certain documents from

---

[8] Defendant also argues that the statute is indivisible with respect to the element of force. Dkt. No. 19 at 3. As stated above, however, the federal definition of rape does not require a "force" element. It is, therefore, irrelevant that the statute of conviction is broad enough to include assault with intent to commit rape without the use of force.

the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating." *Lopez-Valencia*, 798 F.3d at 868. Accordingly, because the Court has concluded that Section 220(a) is a divisible statute it is proper for the Court to look beyond the statutory text, to a limited set of documents, in order to determine whether the crime that the defendant was actually convicted of qualifies as an aggravated felony. *See Ramirez*, 810 F.3d at 1131.

The reasoning in *Taylor* applies equally to convictions that follow pleas rather than jury determinations. *See Shepard*, 544 U.S. at 19-20. When a defendant is convicted by way of a plea, rather than a jury, courts are generally allowed to examine the written plea agreement, transcript or plea colloquy. *Moncrieffe*, 133 S. Ct. at 1684; *U.S. v. Almazan-Becerra* ("*Almazan-Becerra II*"), 537 F.3d 1094, 1097 (9th Cir. 2008). It is also proper to rely on the minute order or abstract of judgment in conducting this analysis. *Kwong v. Holder*, 671 F.3d 872, 879 (9th Cir. 2011). The Ninth Circuit has further held that it is also appropriate to consider the charging document when read in combination with the signed plea agreement. *U.S. v. Corona-Sanchez,* 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc).

"In the context of a guilty plea, the modified categorical approach inquires whether a guilty plea to an offense defined by a nongeneric statute *necessarily admitted* elements of the generic offense." *Alvarado v. Holder*, 759 F.3d 1121, 1130 (9th Cir. 2014) (emphasis in original). This analysis prohibits courts from "look[ing] beyond the record of conviction itself to the particular facts underlying the conviction." *U.S. v. Arriaga-Pinon*, 852 F.3d 1195, 1201 (9th Cir. 2017).

Here, all but one of these documents comprising the record of conviction are inconclusive as to whether Defendant pleaded guilty to assault with intent to commit rape or, for instance, assault with intent to commit a violation of Section 288(c)(1), which is

3:17-cr-00327-GPC-1

not an aggravated felony.[9]  The charging document simply states that Defendant was accused of a § 220(a) violation.  The plea agreement also only references § 220(a).  The abstract of judgment is likewise unhelpful as it only states that Defendant was convicted of "assault with intent to commit a felony."  In other words, none of these documents shed any light on the factual basis for Defendant's plea and therefore do not help the Court in determining what specific iteration of Section 220(a) Defendant pleaded to.

The conviction minutes, however, do provide some insight into the factual basis for the plea.  The minutes states that defense counsel stipulated that the factual basis for the plea was contained in the arrest report.  The Government argues that this stipulation incorporated the police report into the plea by reference and that it is, therefore, proper for the Court to rely upon the police report.  In making this argument, the Government relies heavily on the decision in *Almazan-Becerra II*, which squarely addressed the issue.  537 F.3d 1094.  Defendant, in turn, argues that the police report should not factor into the modified categorical analysis because the reasoning of *Almazan-Becerra* should not apply here.

The *Almazan-Becerra II* court specifically held that a court may look to police reports that are incorporated by reference during the plea colloquy when applying the modified categorical approach.  537 F.3d at 1098.

> While the panel in *Almazan-Becerra I* commented that the police reports "do not necessarily contain either the defendant's own account of the events or a mutually agreed-upon statement of facts," 482 F.3d at 1091, we conclude that, as in *Espinoza-Cano,* the police reports here *became* a mutually-agreed upon statement of facts when Almazan-Becerra stipulated that they contained a factual basis for his plea. Almazan-Becerra's stipulation (that the police reports contained a factual basis for his plea) incorporated the police reports into the plea colloquy, and were thus properly relied upon by the district court.

---

[9] The Court explains below why assault with intent to commit sexual abuse of a minor of 14 or 15, in violation of § 288(c)(1), is not an aggravated felony.

The conviction minutes, here, contained an almost identical stipulation from defense counsel that the factual basis for Defendant's plea was contained in the relevant arrest report. *See* Gov.'s Ex. 3, Dkt. No. 14-3 at 3 ("Counsel stipulate [sic] to a factual basis based on the information contained in the arrest report."). As such and pursuant to the holding in *Almazan-Becerra II*, it is proper for the Court to examine the police report as it was incorporated by reference into the Defendant's plea agreement.

Notwithstanding the straightforward application of *Almazan-Becerra II* to the facts of this case, Defendant argues that its holding should not apply to this case because the Defendant, here, pleaded no contest to the crime rather than guilty, as was the case in *Almazan-Becerra II*.

> This case differs from Almazan-Becerra in notable ways. As an initial matter, Mr. Cazares-Rodriguez pleaded "no contest" to § 220(a), which necessarily means there is no factual basis for the conviction. This differs from Almazan-Becerra where the defendant pleaded guilty.

Dkt. No. 19 at 7. This argument, however, carries little water as there always must be factual basis for a plea. Before a court can accept a plea agreement, he or she must satisfy him or herself that a factual basis for the plea exists, and this is true regardless of whether or not the Defendant admits to those factual findings or not. Here, Defendant conceded that the factual basis for the plea was contained in the arrest report. Accordingly and to the extent that the sentencing judge relied on that concession as the basis for accepting Defendant's plea, the Court can properly rely on the factual findings in the police report. That Defendant's plea was nolo contendere, therefore, makes no difference under the rationale of *Almazan-Becerra II*.

### 3. Examination of the Police Report under the Modified Categorical Approach

After concluding that a sentencing court could properly rely on police reports that were incorporated by reference into the plea colloquy, the *Almazan-Becerra II* court engaged in an analysis of the relevant police report. The *Almazan-Becerra II* court found that a review of the police reports supported the conclusion that the defendant's

conviction was an aggravated felony. Almazan-Becerra was charged with two counts of "the crime of TRANSPORT/SELL/OFFER TO SELL MARIJUANA" in violation of § 11360(a) of the California Penal Code. 537 F.3d at 1096. The complaint also stated that the defendant "did sell and offer to sell a controlled substance, to wit: Marijuana." *Id.* Almazan-Becerra later pleaded guilty to both counts and admitted that the factual basis for the plea was contained in the police reports. *Id.*

The police reports at issue in *Almazan-Becerra II* described the defendant's offense as follows:

> (1) Almazan-Becerra was observed twice handing each of two individuals a brown paper bindle in exchange for a money bill; (2) the two individuals were later apprehended, were found to have in their possession a brown paper bindle containing marijuana, and positively identified Almazan-Becerra as the person who had sold them the marijuana; (3) Almazan-Becerra was then apprehended and was found to have in his possession two money bills whose denominations were consistent with the account of the sales by the two apprehended buyers; and (4) a bindle of marijuana was found on the ground where Almazan-Becerra had previously been walking. The police reports all list the type of offense as "sales of marijuana."

*Id.* The *Almazan-Becerra II* court described the contents of these reports as a "mutually agreed-upon statement of facts" because the defendant had admitted that these reports formed the basis for his plea in his colloquy. *Id.* at 1098. The Court went on to conclude that the police reports "unequivocally" demonstrated that Almazan-Becerra had been convicted of a drug trafficking offense and, therefore, an aggravated felony. *Id.* at 1097. The court reasoned that the facts alleged in the report "rule[d] out" the possibility that Almazan-Becerra had stipulated to anything but the sale of marijuana and thus, jettisoned any remaining doubt that he could have been stipulating to the mere personal use of marijuana, which would not qualify as an aggravated felony. Stated differently, the *Almazan-Becerra II* court concluded that the "record [wa]s 'enough to prove' that Almazan-Becerra was 'convicted of conduct which constituted [a drug trafficking offense] for purposes of the modified categorical analysis" and, thus, was convicted of an

aggravated felony because he only could have pleaded to a drug-trafficking offense, which was an aggravated felony.

Here, however, the facts in the police report do not unequivocally "rule out" the possibility that Defendant pleaded guilty to assault with intent to commit sexual abuse, which is not an aggravated felony.

Defendant pleaded guilty to a violation of § 220(a), which includes assault with intent to commit rape, but also includes assault with intent to commit mayhem and assault to commit lewd or lascivious acts against a minor (i.e. sexual abuse), among other felonies. The Court knows that Defendant pleaded guilty to a felony, but the Court cannot be sure which felony formed the basis for his nolo contendere plea. While it is eminently clear from the facts of the police report that Defendant did not commit assault with intent to commit mayhem, the facts are such that Defendant could have been convicted of a violation of "lewd or lascivious acts on a 14 or 15 year old," a felony, or "rape," also a felony. In other words, because the two felonies listed in § 220(a) cover similar conduct, the Court cannot state with any certainty that Defendant pleaded guilty to "assault with intent to commit rape," the most serious of all of the felonies, as opposed to "assault with intent to commit lewd acts upon a child" in violation of Section 288(c)(1).

The Court moreover notes that any attempt to discern from the police reports what the intent of the Defendant was — whether it was the intent to rape or intent to commit lewd acts — would be patently improper under the modified categorical analysis. The Supreme Court concluded in *Mathis* that judges applying the modified categorical approach are prohibited from engaging in disputed factual determinations about "what the defendant and state judge must have understood as the factual basis of the prior plea." 391 U.S. at 2252 (quotations omitted). "He can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." *Id.* The Supreme Court in *Moncrieffe* echoed this edict when it reiterated

that the "INA asks what offense the noncitizen was 'convicted' of . . . not what acts he committed. 'Convictions' is 'the relevant statutory hook.'" 133 S. Ct. at 1685.

Here, the police report does not "unequivocally" "rule out" the possibility that Defendant was convicted of assault with intent to commit sexual abuse of a 14 or 15 year old, which is not an aggravated felony. It is, therefore, impossible for the Court to conclude what specific *conviction* Defendant pleaded guilty to under § 220(a) without engaging in some factual analysis concerning what the Defendant and state judge "must have understood as the factual basis of the prior plea." While the facts in the police report may establish that Defendant *committed* "assault with intent to commit rape," the Court cannot conclude that Defendant was *convicted of* "assault with intent to commit rape" because the facts also establish that Defendant *committed* "assault with intent to commit sexual abuse of a 14 or 15 year old." Accordingly, and because the Court cannot know which elements Defendant pleaded to, the Court concludes that the police reports do not establish that Defendant was convicted of assault with intent to commit rape.

Because the police reports do not conclusively establish what Defendant's crime of conviction was, and because it is possible that Defendant pleaded guilty to a nongeneric offense, the Court's analysis ends. The Court need not compare assault with intent to commit rape to the federal generic definition of attempted rape because the modified categorical approach and a review of the record of conviction cannot identify what was Defendant's crime of conviction. Accordingly, the Court must conclude that Defendant was not convicted of an aggravated felony.

### 3. Removable as an aggravated felon for sexual abuse of a minor

The Government argues that it does not matter whether the police report "rules out" the possibility that Defendant pleaded guilty to a different Section 220(a) enumerated felony because the only other crime that Defendant could have pleaded to was also an aggravated felony. *See* Dkt. No. 28 at 3.

The Government's theory proceeds as follows. The factual basis for Defendant's plea, as laid out in the police report and as stipulated to by the Defendant, can only

plausibly support two of the predicate sexual offenses listed in Section 220(a): namely, rape or sexual abuse of a minor over 14, in violation of § 288(c)(1).  The other predicate offenses could not have applied because they contain elements that are wholly unsupported by the facts contained within the police report.  *See id.* at 3-5 (explaining why Sections 264.1, 288a(a), 286(a), 289(b)–(f), 288(a), 288(b)(1)–(2) were inapplicable because of the elements they require).  Accordingly and because both assault with intent to commit rape and assault with intent to commit sexual abuse of a minor are aggravated felonies, it does not matter to which crime Defendant pleaded.  Either way, he was convicted of an aggravated felony and would have been properly removable on that basis.

Defendant responds to this argument by asserting that it is improper for the Government to rely on a theory of removability that was not charged in the complaint. *See* Dkt. No. 27 at 3.  In other words, Cazares-Rodriguez is arguing that a due process violation would arise if the Court were to find him removable as an aggravated felon for sexual abuse because the Notice to Appear did not provide notice of that separate charge. The Court, however, need not address Defendant's due process argument because a § 220(a) assault with intent to commit a violation of Cal. Penal Code § 288(c)(1) is not an aggravated felony.

### A.  Sexual Abuse of a 14 or 15 year old minor

The Government argues that Cazares-Rodriguez's conviction under Section 220(a) constitutes an aggravated felony for attempted sexual abuse under 8 U.S.C. § 1101(a)(43)(A) ("aggravated felony" includes "murder, rape, or sexual abuse of a minor") and (U).  The Court disagrees.  Assault with intent to commit sexual abuse is not a categorical match to the generic crime of attempted sexual abuse because California's definition of sexual abuse is broader than the federal definition.  As such and for the reasons stated below, the Government's alternative theory fails to nonetheless demonstrate that Defendant was convicted of an aggravated felony.

Section 288(c)(1) prohibits lewd or lascivious acts against minors who are either 14 or 15.[10]

> (c)(1) Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child.

> (a) Except as provided in subdivision (a), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

Cal. Penal Code §§ 288(c)(1), 288(a). The statute, accordingly, has five elements: "(1) willfully and lewdly; (2) committing any lewd or lascivious act; (3) on a child ages 14 or 15; (4) with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the defendant or the child; and (5) the defendant must be at least ten years older than the child." *U.S. v. Castro*, 607 F.3d 566, 568 (9th Cir. 2010).

In order for this crime to be a categorical match to generic sexual abuse of a minor, the conduct it proscribes cannot be broader than the conduct criminalized by the federal definition of sexual abuse of a minor. There are two federal definitions of sexual abuse of a minor. *Pelayo–Garcia v. Holder*, 589 F.3d 1010, 1013 (9th Cir. 2009). The first has three elements: (1) sexual conduct; (2) with a minor; (3) that constitutes abuse. *Castro*, 607 F.3d at 569. Importantly for present purposes, a statute contains the third element of

---

[10] The police report indicated that the victim in question was 14 at the time of the incident with Defendant.

abuse if it causes "physical or psychological harm in light of the age of the victim in question." *U.S. v. Gonzalez-Aparicio*, 663 F.3d 419, 431 (9th Cir. 2011). The second definition contains four elements: "(1) a mens rea level of knowingly; (2) a sexual act; (3) with a minor between the ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor." *Castro*, 607 F.3d at 569. The "sexual act" element "requires, at a minimum, an intentional touching, not through the clothing, of a minor's genitalia." *Id.* at 570 (citing 18 U.S.C. § 2246(2) (defining a sexual act)). "If the state conviction constitutes 'sexual abuse of a minor' under either generic federal definition, [a court] need not consider whether it satisfies the other definition." *U.S. v. Tafoya-Montelongo*, 659 F.3d 738, 743 (9th Cir. 2011).

In *U.S. v. Castro*, the Ninth Circuit held that convictions under Section 288(c)(1) of the California Penal Code do not qualify as sexual abuse of a minor under either generic federal definition. 607 F.3d at 567-70. The *Castro* court held that Section 288(c)(1) was broader than the first federal definition because it did not "expressly include physical or psychological abuse as an element of the crime," and therefore only proscribed two of the three elements at play under federal law. *Id.* at 569. The *Castro* court further held that Section 288(c)(1) was also broader than the second federal definition because it only prohibits a "lewd or lascivious act," which "can occur through a victim's clothing and can involve any part of the victim's body," whereas the federal definition criminalizes a "sexual act," which requires a touching "not through the clothing of a minor's genitalia." *Id.* at 570.

The Government argues that the holding in *Castro* is not dispositive in our case because the statute of conviction, Section 220(a), is a compound statute that criminalizes assault and intent to commit sexual abuse. Dkt. No. 24 at 11. To prove an assault, the Government asserts, a jury must find that the "defendant did an act that by its nature would ***directly and probably result in the application of force*** to a person." *Id.* (emphasis in original). Accordingly, the Government avers, there is an "abuse" element

in Section 220(a) because "Section 220(a) includes an assault, which implicates the application of force, or physical contact in a 'harmful or offensive manner.'" *Id.* at 12.[11]

The Court is not convinced that a conviction for assault supplies the necessary element of "abuse" that is required by the first federal definition of sexual abuse of a minor and that is lacking in Section 288(c)(1) standing alone. The jury instructions on assault accompanying a violation of Section 220(a) require a jury to find that (1) a person willfully [and unlawfully] committed an act which by its nature would probably and directly result in the application of physical force on another person; (2) the person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person; and (3) at the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another." CALCRIM No. 900.

Notwithstanding the Government's argument to the contrary, these elements do not necessarily meet the "abuse" element required under federal law. A statute satisfies the third element of the second federal definition if it *causes* physical or psychological harm in light of the age of the victim in question. *Gonzalez-Aparicio*, 663 F.3d at 431 (emphasis added). In other words, abuse requires not just the application of force by the defendant, but resulting physical or psychological harm to the victim. The elements described in the jury instructions, however, focus on the perpetrator's application of force rather than on the victim's injury. Yet because a defendant can apply force without *causing* physical or psychological harm in light of the age of the victim, a conviction for assault is broader than the "abuse" required by the first federal definition. Indeed, the

---

[11] The Government does not grapple with *Castro*'s holding as to the second federal definition of sexual abuse nor challenge its conclusion that "lewd or lascivious acts" are broader than "sexual acts" under federal law. Absent any attempt to explain why this Court should not follow *Castro*'s holding, the Court is not inclined to question *Castro*'s conclusion. Regardless, the Court further observes that the police report makes evident that Defendant did not touch the victim's genitalia "not through clothing." Accordingly, the second federal generic definition is not met.

35

3:17-cr-00327-GPC-1

jury instructions for Section 220(a) support this reading of the statute when they state that no actual injury need be inflicted in order to find an individual guilty of an assault. CALCRIM No. 9.00 (Assault –Defined). Accordingly and because a jury need not find that a victim was physically or psychologically abused by the Defendant's conduct in order to find that he or she committed an assault within the meaning of Section 220(a), the Court declines to find that the "assault" element of a Section 220(a) conviction supplies the "abuse" element needed to equate sexual abuse of a minor under Section 288(c)(1) with its federal counterpart.

In sum, the Court concludes that a § 220(a) assault with intent to commit a § 288(c)(1) violation is a not an aggravated felony because the definition of sexual abuse of a minor (of 14 or 15) under California law is broader than the federal definition of sexual abuse of a minor.

## CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss the indictment. Defendant has demonstrated that his underlying removal order was fundamentally unfair because he was not removable as charged. Defendant was not removable as an aggravated felon pursuant to 8 U.S.C. § 1101(a)(43)(U) and (A) because his record of conviction for his Section 220(a) violation is inconclusive and does not rule out the possibility that he pleaded guilty to a crime that is not an aggravated felony, that is, assault with intent to commit a lewd or lascivious act. Accordingly, Defendant was not removable as charged in the Notice of Intent and he was prejudiced by the resulting removal.

Dated: May 19, 2017

Hon. Gonzalo P. Curiel
United States District Judge

3:17-cr-00327-GPC-1